UNITED STATES DISTRICT COURT
                                   DISTRICT OF MAINE

| KENYETTA DAY,                              | )                          |
|                                            | )                          |
|           Plaintiff                        | )                          |
|                                            | )                          |
| v.                                         | )  No. 1:16-cv-00593-JAW   |
|                                            | )                          |
| NANCY A. BERRYHILL,                        | )                          |
| *Acting Commissioner of Social Security,*  | )                          |
|                                            | )                          |
|           Defendant                        | )                          |

                         ***REPORT AND RECOMMENDED DECISION***[1]

   This Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge ("ALJ") supportably found that the plaintiff had no severe impairment. The plaintiff seeks remand on the basis that the ALJ erred in several respects in deeming her lumbar degenerative disc disease ("DDD") and left shoulder impairments nonsevere, including by giving undue weight to the testimony at hearing of medical expert Peter B. Webber, M.D., and to a report of examination by physician's assistant ("PA") Lisa DeWolfe, PA-C. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 15) at 3-14. I find no reversible error and, accordingly, recommend that the court affirm the commissioner's decision.

   Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in

---

[1] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on September 12, 2017, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

relevant part, that the plaintiff had medically determinable impairments of lumbar DDD, left shoulder arthritis with tendon tears, obstructive sleep apnea, borderline obesity, and migraines/headaches, Finding 2, Record at 22; that she had no impairment or combination of impairments that significantly limited or was expected to significantly limit her ability to perform basic work-related activities for 12 months and, therefore, did not have a severe impairment or combination of impairments, Finding 3, *id*.; and that she, therefore, had not been disabled since February 19, 2013, the date of her SSI application, Finding 4, *id*. at 30. The Appeals Council declined to review the decision, *id*. at 1-4, making the decision the final determination of the commissioner, 20 C.F.R. § 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Sec'y of Health & Human Servs*., 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal

effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

## I. Discussion

### A. Finding of Nonsevere Back Impairment

#### 1. Background

The ALJ found that the plaintiff's medically determinable impairments could reasonably be expected to produce her alleged symptoms "<u>except for</u> the low back and lower extremity symptoms she attributes to her lumbar DDD." Record at 23 (emphasis in original). He explained that she had had "minimal findings upon imaging studies" and "inconsistent and often benign findings upon physical examination" and that there was "no substantial evidence that she ha[d] any nerve impingement that could account for her subjective complaints." *Id*.

He elaborated:

There is insufficient evidence to establish that the [plaintiff's] DDD is causing her subjective low back and lower extremity complaints, or any other symptom or limitation. The undersigned therefore finds that the [plaintiff's] DDD . . . is non-severe. Moreover, the [plaintiff] has not been diagnosed with any other medically determinable impairment to account for her low back and lower extremities symptoms, and symptoms alone cannot establish the existence of such an impairment. For these reasons, the undersigned has not considered the [plaintiff's] subjective low back and lower extremity pain and limitations in making a determination regarding the severity of [her] medically determinable impairments.

*Id*. at 23 (citation omitted). He noted:

At the hearing, Dr. Webber testified about the lack of consensus as to whether or not the [plaintiff's] imaging studies have demonstrated nerve root impingement. He concluded that there was a "lack of demonstrative evidence" of neural involvement based upon the objective medical evidence, including objective testing and clinical presentation. Dr. Webber further testified that had there been nerve impingement at S1 "to a point of serious degree," it would have "shown up" on the nerve conduction studies.

\*\*\*

> Dr. Webber testified, the etiology of [the plaintiff's] symptoms is <u>unknown</u>, and symptoms alone cannot establish the existence of a medically determinable impairment.

*Id*. at 24-25 (citation omitted) (emphasis in original).

Turning to the expert opinion evidence of record bearing on the plaintiff's DDD, the ALJ explained that he had given "the greatest weight" to Dr. Webber's testimony, "little weight" to the opinions of agency nonexamining consultants Richard T. Chamberlin, M.D., and Marcia Lipski, M.D., except that their findings of a nonsevere DDD condition were "consistent with the medical evidence of record, and Dr. Webber's conclusions[,]" and "very little weight" to the opinions of the plaintiff's primary care physician, Marie Albert, D.O. *Id*. at 28-29 (citations omitted). He stated that, to the extent that Drs. Chamberlin and Lipski had assessed functional restrictions relating to the plaintiff's lumbar DDD, they were inconsistent with their determinations that the condition was nonsevere. *See id*. at 28-29.

With respect to the Webber testimony, the ALJ explained, in relevant part:

> Dr. Webber is thoroughly familiar with the Social Security Administration disability standards. Unlike the other medical professionals who rendered opinions in this matter, Dr. Webber was able to review all of the medical evidence of record, and his opinions are consistent with the evidence of record as a whole. Moreover, he was able to observe the [plaintiff] at the hearing and ask her questions. Dr. Webber provided detailed and thoughtful opinions and analysis, and he cited to specific records in describing the bases of his conclusions. As described above, Dr. Webber determined that the etiology of the [plaintiff's] low back and lower extremity symptoms is unknown, which is soundly based upon the fact that there has been disagreement among providers as to whether the [plaintiff] has any nerve root impingement, the [plaintiff's] negative EMG [electromyogram] study, and the absence of consistently positive SLR [straight leg raise] tests over time. Dr. Webber noted the wide discrepancy between the objective evidence and the [plaintiff's] subjective symptoms, which further supports his finding that there is no diagnosis of a medically determinable impairment that would account for these symptoms.

*Id*. at 28. With respect to the Albert opinion, the ALJ explained:

4

> As Dr. Webber noted at the hearing, Dr. Albert's opinions regarding the [plaintiff's] alleged low back pain are based upon the [plaintiff's] subjective complaints. Indeed, the only "clinical findings and objective signs" she cites as bases for her opinions are that the [plaintiff] "moves slowly" and "uses a cane." More critically, she does not offer a diagnosis of a medically determinable impairment that would account for the [plaintiff's] symptoms, and instead has provided only a "diagnosis" of "chronic low back pain"; and symptoms alone cannot establish the existence of a medically determinable impairment. Moreover, even if Dr. Albert had identified such an impairment, her [opinion that the plaintiff had a] less than sedentary work capacity is greatly in excess of and inconsistent with the medical evidence of record, including her treating records, the [plaintiff's] imaging studies, and the [plaintiff's] activity levels, as described above.

*Id.* at 29 (citations omitted).

## 2. Failure To Continue Past Step 2 on Record Presented

As a threshold matter, the plaintiff argues that the ALJ erred in finding a nonsevere back impairment given Dr. Albert's opinion that the condition was severe and imposed significant functional restrictions. *See* Statement of Errors at 7-9. She argues that the existence of this contrary evidence, on its face, was enough to demonstrate that the condition met the *de minimis* test of severity and to proceed with the sequential evaluation process. *See id.* at 8 ("Here, admittedly, the evidence is inconclusive. Where a question of severity exists, the sequential evaluation process must continue."). She points out that, in a decision issued on September 22, 2011, one day prior to her alleged onset date of disability for purposes of the current application, a different ALJ deemed her DDD severe. *See id.* at 9-10. She contends that "it is difficult to credit [the ALJ's] inexplicable finding that, essentially, in the course of one day from September 22 to September 23, 2011, [the plaintiff's] severe impairments failed to meet even the *de minimis* Step 2 severity standard articulated by the First Circuit." *Id.* at 10.

Nonetheless, as the commissioner argues, *see* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 19) at 2-3, the existence of inconclusive or conflicting evidence at Step 2 does not require a finding that a claimant has a severe impairment

5

or impairments. It is the ALJ's job to resolve evidentiary conflicts. *See, e.g., Rodriguez*, 647 F.2d at 222 ("The [commissioner] may (and, under [her] regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [her], not for the doctors or for the courts."). Absent legal error, "[t]he ALJ's findings of fact are conclusive when supported by substantial evidence[.]" *Nguyen v. Chater,* 172 F.3d 31, 35 (1st Cir. 1999) (citation omitted). To the extent the evidence is "inconclusive," it is the plaintiff's burden at Step 2 to demonstrate that her impairments are severe. *See, e.g.*, *McDonald*, 795 F.2d at 1124.[2]

### 3. ALJ's Handling of Albert Opinion

The plaintiff next contends that the ALJ erroneously rejected the Albert opinion in large part because Dr. Albert offered no diagnosis other than "chronic low back pain," a rejection that she asserts was "disingenuous" because the ALJ had conceded that she suffered from a medically determinable impairment of DDD. Statement of Errors at 4-5. She adds that the ALJ further erred as a matter of law in deeming Dr. Albert's assessed limitation to less than a sedentary exertional capacity excessive because, for purposes of Step 2 analysis, the ALJ was required to determine only whether Dr. Albert had reasonably identified any severe limitation. *See id*. at 5-6. Finally, she contends, the ALJ erred in finding no clinical basis for Dr. Albert's severity opinion when, in

---

[2] At oral argument, the plaintiff's counsel contended that remand was warranted because the ALJ erred in revisiting the prior finding of a severe back impairment absent explanation for the change, a proposition for which he cited *Staples v. Colvin*, No. 2:15-cv-392-DBH, 2016 WL 4146083 (D. Me. Aug. 3, 2016) (rec. dec., *aff'd* Oct. 6, 2016). As the plaintiff's counsel acknowledged, this argument was not made in the statement of errors. *See* Statement of Errors at 3-10. Accordingly, it is waived. *See, e.g., Farrin v. Barnhart,* No. 05-144-P-H, 2006 WL 549376, at *5 (D. Me. Mar. 6, 2006) (rec. dec., *aff'd* Mar. 28, 2006) ("Counsel for the plaintiff in this case and the Social Security bar generally are hereby placed on notice that in the future, issues or claims not raised in the itemized statement of errors required by this court's Local Rule 16.3(a) will be considered waived and will not be addressed by this court.") (footnote omitted). In any event, *Staples* is materially distinguishable in that it concerned a decision issued following remand. *See Staples*, 2016 WL 4146083, at *2. In that context, this court observed that "reconsideration of the finding at Step 2 that a claimant's impairment is severe is foreclosed when the remand order does not specifically direct the [ALJ] to undertake that task." *Id*. The decision at issue here resulted from a fresh application for disability benefits. *See* Record at 19.

6

fact, there is radiological evidence of her DDD of the lumbar spine. *See id.* at 6. She contends that, as a result of these errors, the ALJ failed to supply the requisite "good reasons" for rejection of the Albert opinion, warranting remand. *See id.*; 20 C.F.R. § 416.927(c)(2).

I find no error. The fact that Dr. Albert offered no diagnosis other than "chronic low back pain" was a proper basis on which to discount her opinion, regardless of the existence of other record evidence of a diagnosis of DDD. *See* 20 C.F.R. § 416.927(c)(3) (factors relevant to assessment of medical opinions include supportability; the more a medical source identifies relevant findings to support her opinion and the better explained it is, the more weight it merits). Nor was the finding "disingenuous." The ALJ had explained that, although he *did* find that the plaintiff had a medically determinable impairment of DDD, he *did not* find sufficient evidence to establish that her DDD was the *cause* of any of her low back or lower extremity symptoms. *See* Record at 23. In turn, because the plaintiff's symptoms could not be attributed to a medically determinable impairment, they could not be taken into account. *See* Social Security Ruling 96-3p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2017) ("SSR 96-3p"), at 116 ("Symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect an individual's ability to do basic work activities unless the individual first establishes by objective medical evidence (i.e., signs and laboratory findings) that he or she has a medically determinable physical or mental impairment(s) and that the impairment(s) could reasonably be expected to produce the alleged symptom(s).") (citation omitted); *Dowell v. Colvin*, No. 2:13-cv-246-JDL, 2014 WL 3784237, at *3 (D. Me. July 31, 2014) ("[A] diagnosis of degenerative disc disease, standing alone, does not establish the severity of the disease nor the limitations that result for a particular individual.").

Nor did the ALJ err in discounting the Albert opinion on the basis of Dr. Albert's assessment of less than a sedentary exertional capacity. While the ALJ ended his analysis at Step 2, he properly assessed the merits of the Albert opinion on the basis of the conclusions reached by Dr. Albert, including her work capacity assessment. *See, e.g., Small v. Colvin*, No. 2:14-cv-042-NT, 2015 WL 860856, at *5, *7 (D. Me. Feb. 27, 2015) (ALJ supportably rejected treating physician's assessment of functional limitations caused by right arm/hand impairment and found condition nonsevere).

Finally, the ALJ did not err in finding no clinical basis for the Albert opinion. As the commissioner points out, *see* Opposition at 4, 9 n.2, the radiological evidence on which the plaintiff relies, showing disc bulges and protrusions at the L5-S1 level, dates from September 2010 and February 2011, well prior to the relevant period in this case, which began on the date the plaintiff filed her SSI application in February 2013, *see* Statement of Errors at 5; Record at 543, 644; *Langley v. Colvin*, No. 1:16-cv-00064-JDL, 2016 WL 7477537, at *3 (D. Me. Dec. 29, 2016) (rec. dec., *aff'd* Feb. 10, 2017) (relevant period for purpose SSI benefits begins on date of application).

The ALJ correctly noted that a January 2012 MRI showed only a mild bulge at L5-S1 without neural compression, which was characterized as "fully negative," and July 2014 x-rays revealed no significant abnormality in the lumbar spine. *See* Record at 24, 673-74, 773, 940-41.

Beyond this, the ALJ properly discounted the Albert opinion on the further bases that it was predicated largely on the plaintiff's subjective complaints and was inconsistent with her activities, including caring for small children, preparing meals, doing housework, shopping for groceries, driving, and using a treadmill. *See id.* at 27, 29, 929-31; *see also, e.g., Morgan v. Colvin*, Civil No. 2:14-CV-140-DBH, 2015 WL 4496412, at *2 (D. Me. July 23, 2015) (inconsistency of

8

treating source's opinion with claimant's activity level among good reasons for according opinion little weight); *Bailey v. Colvin*, No. 2:13-cv-57-GZS, 2014 WL 334480, at *3 (D. Me. Jan. 29, 2014) (reliance on a claimant's subjective allegations of pain a well-recognized basis for rejection of a treating physician's conclusions).

In sum, the ALJ addressed and provided good reasons for his handling of the Albert opinion. No more was required.

### 4. ALJ's Reliance on Webber Testimony

The plaintiff also takes issue with the ALJ's heavy reliance on the Webber testimony, which she contends was "inherently unreliable" because Dr. Webber conceded that he could not give a definitive opinion as to the plaintiff's DDD and did not know whether it resulted in functional limitations. *See* Statement of Errors at 11. Dr. Webber testified that he did not know whether the plaintiff's back impairment imposed "any serious restrictions on her ability to function[.]" Record at 83.

Yet, Dr. Webber's testimony supported the ALJ's finding that, although the plaintiff had a medically determinable DDD condition, she had failed to meet her burden of proving that it caused the symptoms or functional limitations of which she complained. *See id.* at 77-78 (Webber testimony that the etiology of the plaintiff's back symptoms was unclear); *see also, e.g., Coffin v. Astrue*, Civil No. 09-487-P-S, 2010 WL 3952865, at *2 (D. Me. Oct. 6, 2010) (rec. dec., *aff'd* Oct. 27, 2010) ("It is the plaintiff's burden to produce sufficient evidence to allow the commissioner to reach a conclusion at Step 2; the absence of evidence provides support for a conclusion adverse to the plaintiff at this point in the sequential evaluation process.").

In any event, as the commissioner argues, *see* Opposition at 8-9, any error in relying on Dr. Webber's testimony for the proposition that the plaintiff's back impairment was nonsevere is

9

harmless because the ALJ identified other substantial evidence in support thereof. While he gave the Chamberlin and Lipski opinions little weight overall, he stated that he deemed their conclusions that the plaintiff had no severe back impairment "consistent with the medical evidence of record," as well as Dr. Webber's conclusions. Record at 28. He further relied on essentially normal MRI and x-rays findings during the relevant period, as well as the plaintiff's level of activity, to find her back impairment nonsevere. *See id.* at 24, 27.[3]

## B. Finding of Nonsevere Shoulder Impairment

### 1. Background

The ALJ found that the plaintiff had a nonsevere condition of arthritis and tendon tears in her left shoulder. *See id.* at 25. He recounted that in June 2012, after the plaintiff complained of left arm and shoulder pain, she underwent an MRI of her left shoulder that revealed probable glenoid labral tears and mild hypertrophic change at the acromioclavicular ("A/C") joint. *See id.* He noted that she had canceled a left shoulder arthroscopy scheduled for January 2013, the cost of which would have been covered by MaineCare, because she had no ride home. *See id.* He observed that, although she never rescheduled that surgery, she had since undergone an unrelated surgery. *See id.*

He acknowledged that physician's assistant ("PA") Molly C. Jennings, PA-C, a United States Department of Veterans Affairs ("VA") examiner, had opined in January 2013 that the

---

[3] At oral argument, the plaintiff's counsel contended that the ALJ misconstrued Dr. Webber's testimony when he twice stated that Dr. Webber had concluded that the etiology of the plaintiff's back symptoms was "unknown." Record at 25, 28. He pointed out that Dr. Webber had actually testified that the etiology of those symptoms was "unclear." *Id.* at 77-78. He argued that this was a material difference because "unknown" suggests that there is no basis for a diagnosis, whereas "unclear" suggests that there is a basis but that Dr. Webber could not determine what it was. This argument, as well, was not raised in the statement of errors and is therefore waived. *See* Statement of Errors at 3-11; *Farrin*, 2006 WL 549376, at *5. In any event, were it not waived, it is not outcome-determinative. As counsel for the commissioner rejoined, Dr. Webber made clear that he declined to assess functional restrictions flowing from the plaintiff's medically determinable DDD impairment or from any other possible back impairment. *See* Record at 89. As discussed above, this supported the ALJ's finding that the plaintiff had failed to show that her sole medically determinable back impairment, DDD, was the cause of her claimed symptoms.

plaintiff could not do heavy, repetitive work with her left shoulder or overhead work. *See id*. However, he stated that, in August 2014, the plaintiff underwent a left shoulder arthrogram/MRI that revealed no significant findings and, in June 2015, another VA examiner, PA DeWolfe, found that the plaintiff had full left shoulder range of motion and motor strength and opined that her left shoulder condition caused no limit in "her ability to perform any type of occupational task." *Id*. (quoting *id*. at 1041).

The ALJ described PA DeWolfe's conclusion as "consistent with the [plaintiff's] modest imaging findings, as well as her physical examinations in general, which demonstrate positive Neer and Hawkins-Kennedy tests, but have otherwise been mainly benign[,]" as well as the fact that she had not sought any treatment for her left shoulder since August 2014. *Id*. at 25-26. He summarized:

> In light of the [plaintiff's] modest objective findings; lack of shoulder restrictions from her treating providers, Ms. DeWolfe, or Dr. Webber; inconsistencies in her reports of her pain levels; cancellation of her shoulder surgery; and lack of treatment since August 2014, the undersigned concludes that [her] left shoulder condition causes no more than a minimal effect on her ability to perform work-related activities, and is therefore non-severe.

*Id*. at 26.

He deemed Dr. Webber's opinion that the left shoulder condition was nonsevere "consistent with the medical evidence of record as a whole, which . . . demonstrates that the [plaintiff] has had modest objective findings, cancelled her arthroscopy, and has had no specific treatment for her left shoulder since August[] 2014, as well as [her] activity levels, as described in detail above." *Id*. at 28.

He acknowledged that Drs. Chamberlin and Lipski had found a severe shoulder impairment, assessing related functional restrictions, but stated that their opinions were inconsistent with the medical evidence of record. *See id*. He explained that, unlike Dr. Webber,

Drs. Chamberlin and Lipski did not have the opportunity to review all of the medical records or to take into account the plaintiff's August 2014 left shoulder MRI, which revealed no significant findings, or her lack of treatment for the shoulder since that time. *See id.*

He stated that he gave "great weight" to the opinion of PA DeWolfe, which he deemed consistent with her observation on physical examination that the plaintiff had some positive findings but full range of motion and strength, as well as the medical records as a whole and Dr. Webber's conclusion that the plaintiff had no left shoulder restrictions. *See id.* at 29. He gave "little weight" to the Jennings opinion, which he considered inconsistent with the longitudinal medical records relating to the plaintiff's left shoulder as well as with Dr. Webber's opinion that she had no severe left shoulder condition. *Id.*

### 2. Failure To Continue Past Step 2 on Record Presented

The plaintiff argues with respect to her left shoulder impairment, as she did with respect to her back impairment, that the ALJ erred as a threshold matter in failing to find her shoulder impairment severe given the existence of record evidence supporting its severity, namely, the opinions of Jennings, Dr. Chamberlin, and Dr. Lipski. *See* Statement of Errors at 7-8. For the reasons discussed above, this point is without merit. The plaintiff cites no authority for the proposition that the mere existence in the record of opinion evidence that a claimant's impairment is severe or disabling requires an ALJ to find as a matter of law that it is severe. On the contrary, as noted above, an ALJ's findings of fact, if unaffected by legal error, are conclusive if supported by substantial evidence. *See, e.g., Nguyen,* 172 F.3d at 35.

### 3. ALJ's Reliance on Webber Testimony

The plaintiff contends that Dr. Webber's testimony regarding her shoulder impairment, like his testimony regarding her back impairment, is too speculative and inconclusive to stand as

12

substantial evidence that her shoulder impairment was nonsevere. *See* Statement of Errors at 10-11. Dr. Webber stated that he did not feel he could give a "definitive opinion" on the effect of the plaintiff's shoulder impairment on her work capacity. Record at 81. As the plaintiff's counsel noted at oral argument, the ALJ misconstrued the Webber testimony. Dr. Webber did not offer an "opinion that [the left shoulder] condition is non-severe[.]" *Id*. at 28.

Nonetheless, as the commissioner argues, *see* Opposition at 13-14, any error in relying on Dr. Webber's testimony for that proposition is harmless. The ALJ also relied on (i) PA DeWolfe's June 2015 opinion that the condition imposed no functional limitations, (ii) generally benign objective findings, (iii) the plaintiff's cancellation of her scheduled January 2013 arthroscopy, and (iv) her lack of specific treatment for her shoulder after August 2014. *See* Record at 25-26, 29. While there was conflicting evidence, this constituted substantial evidence in support of the ALJ's nonseverity finding.[4]

### 4. ALJ's Reliance on DeWolfe Opinion

The plaintiff finally argues that the ALJ erred in relying on the DeWolfe opinion because he misconstrued it. *See* Statement of Errors at 12-14. She contends that, for purposes of her VA compensation and pension examination, PA DeWolfe evaluated the functional effect only of the

---

[4] The plaintiff separately challenges the ALJ's reliance on the DeWolfe opinion. *See* Statement of Errors at 12-14. However, for the reasons discussed below, I find no error. At oral argument, the plaintiff's counsel raised a further point not made in the statement of errors: that the ALJ misconstrued the August 2014 MRI of his client's shoulder as revealing no significant abnormality when the radiologist who reviewed it found a "[n]ew focal full-thickness chondromalacia with adjacent subchondral fibrocystic change involving the bony glenoid," stating, "Could findings explain clinical symptomatology?" Record at 940. The radiologist recommended clinical correlation, stating, under the heading Primary Diagnostic Code, "significant abnormality attention needed[.]" *Id*. (capitalization omitted). The plaintiff's counsel pointed out that Drs. Chamberlin and Lipski did not have the benefit of review of this finding, which postdated their opinions. Again, because this argument was not raised in the statement of errors, it is waived. *See, e.g., Farrin*, 2006 WL 549376, at *5. In any event, the DeWolfe finding of no left shoulder functional limitation postdated the August 2014 MRI report, in which the radiologist questioned whether the new abnormality he noted could be causing the plaintiff's symptoms but made no finding that it had. *See* Record at 940, 1032-41.

shoulder impairment connected to her military service, a left shoulder strain, not her other left shoulder conditions. *See id.* at 12.

She relies on the fact that PA DeWolfe listed "the claimed condition(s) that pertain to this DBQ [Disability Benefits Questionnaire]" as "[s]houlder strain" and stated, in response to a request to describe the history of the plaintiff's shoulder condition:

> The [plaintiff] is here for compensation and pension exam regarding her s/c [service-connected] shoulder strain. The [plaintiff] states she has spasm in the shoulder and pain and it radiates to her neck. [She] has had evaluations re[c]ently for multiple shoulder issues and the diagnosis and treatment options are still being considered. These are not the service related condition. These include AC djd [degenerative joint disease] and a possible cuff impingement/labral injury that developed in the past few years.

*Id.*; Record at 1033-34.

She adds that PA DeWolfe recorded several abnormal findings on examination, including evidence of pain on repetitive use, weightbearing, and palpation, a positive Hawkins' Impingement Test, and a positive External Rotation/Infraspinatus Strength Test, and noted that imaging studies documented degenerative or traumatic arthritis. *See* Statement of Errors at 12-13; Record at 1035-41.

Yet, as the commissioner points out, *see* Opposition at 13, PA DeWolfe was asked, in the Functional Impact section of the questionnaire, whether "the condition(s) listed in the Diagnosis [s]ection impact [the plaintiff's] ability to perform any type of occupational task (such as standing, walking, lifting, sitting, etc.)[,]" Record at 1041.

In turn, in the Diagnosis section, PA DeWolfe was asked not only to list the claimed conditions pertaining to the DBQ but also to "[s]elect diagnoses associated with the claimed condition(s)[.]" *Id.* at 1033. In response to the latter question, she checked boxes for shoulder strain, diagnosed in 1992, shoulder impingement syndrome, diagnosed in 2013, labral tear,

14

diagnosed in 2014, and degenerative arthritis, diagnosed in 2013. *See id*. at 1034. Thus, as the commissioner argues, *see* Opposition at 13, the ALJ reasonably construed the DeWolfe report to have indicated that none of those left shoulder conditions affected the plaintiff's ability to work.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 2nd day of November, 2017.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge